**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**DINARLDO MATTHEWS,**
a/k/a "Kasheem Allah"

      Petitioner

    v.                                                   **Criminal No. 2:00-CR-213**
                                                             **Civil No. 2:05-CV-339**

**UNITED STATES OF AMERICA**

      Respondent

**OPINION AND ORDER**

Presently before the Court on remand from the United States Court of Appeals for the Fourth Circuit is the Petitioner's Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255, wherein Petitioner seeks habeas relief on the ground of ineffective assistance of counsel. Pursuant to and in accordance with the judgment and order of the Fourth Circuit, this Court held an evidentiary hearing on September 19, 2007, to determine whether Petitioner requested his attorney, Harry Harmon, to file an appeal subsequent to Petitioner's sentencing hearing on May 17, 2004. For the reasons discussed herein, the petition is **DENIED**.

**I.     FACTUAL AND PROCEDURAL HISTORY**

On November 20, 2000, Petitioner and five co-conspirators were charged in a thirty-nine count sealed indictment stemming from a drug trafficking conspiracy. Petitioner was arrested on January 14, 2004, and the Court appointed Harry Dennis Harmon Jr. as Matthews's attorney on January 21, 2004. The United States subsequently moved to dismiss several of the counts

against Petitioner, and on February 4, 2004, Petitioner pled guilty to Count One of the indictment, Conspiracy to Distribute and Possess with Intent to Distribute Heroin and Cocaine in violation of 21 U.S.C. § 846. In a written plea agreement Matthews explicitly waived his right to appeal the conviction and any sentence within the maximum provided for in the statute of conviction. At the February 4, 2004 guilty plea proceeding the Court conducted the colloquy as required by Rule 11 of the Federal Rules of Criminal Procedure. The Court explained to Matthews the consequences of executing the plea agreement, including the consequences of waiving his right to appeal:

> THE COURT: Now, everyone has a right to appeal any sentence this court imposes. Your plea agreement contains a provision whereby you waive your right to appeal. That means you just don't have a right to appeal any sentence this court imposes. But you still have a right to appeal should I – should the sentence exceed the maximum allowed by statute. In this case it's life. I don't know how it could exceed it, but should it exceed it you would have a right to appeal; ***however, you have waived that right to appeal. . . . And I want you to understand what's contained in the plea agreement, that you have waived your right to appeal*** while the government claims it has a right to appeal.

Tr. of Guilty Plea Proceedings (2/4/04) at 18 (emphasis added). Having satisfied itself that Matthews knowingly and voluntarily entered into the plea agreement and the plea of guilty, the Court accepted the guilty plea and found the Petitioner guilty as to count one of the indictment. Matthews's attorney filed numerous objections to the pre-sentence investigation report, many of which were sustained by the Court, and succeeded in substantially reducing the sentence proposed by the Probation Officer. On May 17, 2004, the Court sentenced Matthews to 225 months imprisonment and five (5) years of supervised release. At the conclusion of the sentencing hearing, the Court again advised Matthews of his right to appeal:

| | |
|---|---|
| THE COURT: | You have a right to appeal, Mr. Matthews. If you desire to appeal, your appeal must be in writing and filed within 10 days from the date hereof. [Your attorney] has joined the petition that is the plea agreement, and so have you, and in your plea agreement you waived your right to appeal; however, that doesn't mean you can't appeal. You have a right to appeal if the sentence imposed is greater than the statutory maximum. And although you have waived your right to appeal I will – [your attorney] is in a catch 22 situation. That is, he has agreed that, according to the plea agreement, that he would not appeal, and you have agreed not to appeal; however, you have a right to appeal, so if you want to appeal I'll ask you right now, do you desire to appeal the sentence that has been imposed in this case? I'm happy to instruct the clerk to file a notice of appeal for you. Do you understand your rights? |
| THE DEFENDANT: | Yes, I do. |
| THE COURT: | Do you desire to appeal? |
| THE DEFENDANT: | No, sir. |

Tr. of Sentencing Proceedings (5/17/04) at 23-24.

On May 13, 2005, just shy of a year after his sentencing, Petitioner filed a motion to vacate his May 17, 2004 sentence on the grounds that (1) his waiver of appeal was not knowing and intelligent and (2) his attorney rendered ineffective assistance of counsel by failing to appeal his sentence. Petitioner claims that *immediately following* the sentencing, during which he told the Court he did not want to appeal, and *just before* the U.S. Marshals handcuffed him, he instructed defense counsel to file an appeal. This Court denied Petitioner's § 2255 motion on June 13, 2005. The Court found that the waiver of appeal was both knowing and voluntary and, furthermore, that there was no basis for arguing that Matthews's attorney rendered ineffective assistance of counsel by not appealing the conviction. After examining the transcripts of the plea and sentencing hearings, the Court rejected Matthews's assertion that he asked defense counsel to appeal and ruled that even if Matthews had notified his attorney of his intent to appeal, the

attorney's failure to note an appeal did not constitute ineffective assistance of counsel where the Petitioner had waived his right to appeal in the plea agreement and the Court had preserved the Petitioner's statutory right to appeal by offering to note an appeal at the sentencing hearing. Matthews appealed this Court's denial of his petition. The Government submitted the affidavit of Mr. Harmon, Matthews's counsel, who stated that Matthews never asked him to file an appeal. (Resp't Br. Ex. D, Oct. 31, 2006.) In its opinion of July 9, 2007, the Fourth Circuit reversed this Court and found that there was a genuine issue of material fact concerning whether Matthews was denied effective assistance of counsel. The Fourth Circuit remanded the case to this Court to hold an evidentiary hearing as to whether Petitioner had asked counsel to appeal.

The question of post-sentencing effective assistance of counsel where a defendant has waived his right to appeal is an interesting matter because there is little that a lawyer can do to aid his client after judgment is pronounced. The chief method of reducing a legal sentence subsequent to a pronouncement is by rendering "substantial assistance" to the Government, see Fed. R. Crim. P. 35, and the opportunity to do so is largely extinguished by the filing of an appeal. And yet, as a matter of law, the failure to note an appeal is ineffective assistance of counsel. Mr. Matthews faced a term of imprisonment of between 324 and 405 months, and his attorney's efforts were largely responsible for the actual sentence of 225 months. The Petitioner was fully aware that the only way of further reducing his sentence was by cooperating with the Government. As the Petitioner was told at sentencing after his eleven years in the heroin trade:

> THE COURT: Your only chance of even improving this sentence, which I think is lenient in accordance with having read the presentence report, is to cooperate with the government. I'm sure Mr. Harmon has told you that. That way you possibly may be able to get your sentence reduced. But you ought to thank your lucky stars you had Mr. Harmon

4

helping you.

Tr. of Sentencing Proceedings (5/17/04) at 21. It is also clear that the Petitioner is a clever and knowledgeable individual, demonstrated by his awareness of <u>United States v. Booker</u>, 543 U.S. 220 (2005), and <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), in his own testimony at this hearing. Moreover, Mr. Harmon, Matthews's attorney, attested to the Petitioner's research as to incarceration facilities at the sentencing hearing:

> MR. HARMON: "[T]his is only because my client has done some thorough research as to what facilities would help him out, try to rehabilitate him. He would like the Court to recommend FCI Fairton in Fairton, New Jersey because of their programs they have."

Tr. of Sentencing Proceedings (5/17/04) at 21-22. The Court explained that the Bureau of Prisons and Petitioner's sentence would determine his place of incarceration and then went on to explain again:

> THE COURT: Besides cooperating with the Government, there is one other way you can get your sentence reduced, and that is by the Bureau of Prisons making a motion to reduce your sentence. They have done it in one case I'm aware of in my time on the bench...

Tr. of Sentencing Proceedings (5/17/04) at 23. Petitioner's knowledge and cleverness was noted by the Court at the time of sentencing:

> THE COURT: You know, Mr. Matthews, the thing that comes out in this presentence report is your native intelligence and your ability to have progressed if you'd gone into a legitimate enterprise. This is what's so disturbing is that you would have succeeded no matter what you did... There are not that many people that have that much intelligence. There are just not that many people that do. It's just a shame that you went down that road because you could have achieved so much in just the private sector without having to resort to that. And you've done a lot for a lot of

>people. It makes it a tough road to hoe in looking at it. However, you were involved in this trade to an extent, probably because of your intelligence, that's well-defined. It was a great operation from an economic standpoint, but from a social standpoint it was disastrous.

Tr. of Sentencing Proceedings (5/17/04) at 16-17. Petitioner further demonstrated his intelligence in his letter to the Court dated August 7, 2007, which was a memorandum of law that many lawyers would envy. Thus the Petitioner is a researcher with native intelligence and a knowledge of the law and its requisites.

On September 19, 2007, this Court conducted an evidentiary hearing to make the necessary findings of fact and conclusions at law for the appropriate resolution of Petitioner's § 2255 motion. Matthews appeared with counsel and presented four members of his family as witnesses, in addition to himself, three of whom testified that they overheard a conversation between Matthews and his attorney, Harmon, in which Matthews told Harmon that he wanted to appeal[1]. The witnesses testified that this oral exchange occurred immediately after the sentencing hearing concluded and before the Marshals took custody of Matthews. Three witnesses, sisters of the Petitioner, also testified that the family met with defense counsel Harmon shortly after leaving the courtroom in which the hearing took place. Petitioner's fourth witness, his mother Linda Matthews, testified that she observed the conversation between her

---

[1] Emiko Matthews-Mason testified that her brother told Mr. Harmon that he wanted to appeal and that Harmon should follow-up with his family, to which Mr. Harmon responded that he would "see what he could do;" Venice Matthews testified that Matthews and Harmon spoke for ten minutes before the Marshals removed Matthews from the courtroom and that her brother told Harmon that he wanted to appeal and instructed him to give copies of "the papers" to his sister, to which Harmon responded "okay, and I'll give the papers to your sister;" and Shalon Matthews testified that she heard her brother tell Harmon that he needed an appeal and saw Mr. Harmon nod during the conversation, but she was unable to hear Harmon's response.

son and Harmon but was unable to hear the subject matter of the conversation. Linda Matthews was also unable to recall whether she spoke with defense counsel Harmon shortly after the proceeding concluded. Linda Matthews did recall that she attempted to telephone Harmon about one week later and testified to leaving several messages. She stated that she probably made reference to her son's case in the messages, but it was unlikely that she specifically mentioned the issue of an appeal.

Petitioner's sister Emiko Matthews-Mason testified to making about a dozen phone calls to defense counsel Harmon following the sentencing hearing. She told the Court that she was able to reach Harmon on only one occasion and that he told her he was away from the office but would get back to her when he returned. Emiko Matthews-Mason allegedly never heard back from Mr. Harmon and left several unreturned messages on Mr. Harmon's answer machine, some of which referenced her brother's appeal. Following the testimony of his family, Petitioner took the stand and told the Court that he spoke with his attorney, Mr. Harmon, for about two minutes immediately after the undersigned exited the courtroom on May 17, 2004. Petitioner stated that he asked Harmon to make the appeal and that the conversation was the last oral communication between the two of them. This was contrary to Mr. Harmon's notes and bill submitted in 2004.

Mr. Harmon, Matthews's attorney, testified that neither the Petitioner nor his family asked Harmon to file an appeal. Throughout the course of his representation of Petitioner, Harmon took meticulous notes recording his work for Matthews and his conversations with both Matthews and his family. Harmon testified that he had no record in his notes of a request to appeal, it was his practice to memorialize any conversations regarding appeals, and he would

have noted such a request in this case. His bill does reflect a telephone conversation with Emiko Matthews-Mason on May 25, 2004, some eight days after sentencing, as well as several phone calls with or voicemails from Emiko and Linda Matthews in the time leading up to the May 17, 2004 sentencing. In response to his conversation with Emiko on May 25th and two telephone messages from the Petitioner on May 24th and May 25th, Harmon immediately went to visit the Petitioner, his client, concerning cooperation and the necessity of giving to the Government the name of the family member who was involved in the supply of drugs to the conspiracy. Harmon was unable to gain access to the Petitioner on his first visit on May 25th because of the jail requirements. He returned on the following day, May 26, 2004, and met with Petitioner for 1.4 hours, corroborated by his notes and the bill that he submitted in 2004. Harmon's notes reflect that the two discussed the Petitioner's cooperation with the Government during debriefing sessions, specifically Matthews's cooperation in "giving up" a family member whom the Government was investigating for drug crimes. Mr. Harmon's notes do not, however, indicate any discussion of an appeal. Harmon testified that he only became aware of his client's intent to appeal nearly a year later when Matthews wrote to him by letter dated April 25, 2005, seeking assistance with his § 2255 motion and asking him to provide a letter admitting that he failed to file the notice of appeal. Harmon responded by letter dated May 2, 2005, stating that he did not recall any such request to appeal.

II.     ANALYSIS

### A.

Matthews proceeds under 28 U.S.C. § 2255, which provides for the collateral attack of a conviction or sentence that was imposed in violation of the United States Constitution or laws,

where the court lacked jurisdiction to impose the sentence, when the sentence was in excess of the maximum authorized by law, or when the sentence or conviction is otherwise subject to collateral attack. In order to prevail on his § 2255 motion, the Petitioner bears the burden of proving his grounds for collateral relief by a preponderance of the evidence. Vanatar v. Boles, 377 F.2d 898, 900 (4th Cir. 1967). Section 2255 is designed to correct fundamental constitutional or jurisdictional error which would otherwise "inherently result[] in a complete miscarriage of justice." United States v. Addonizio, 442 U.S. 178, 185 (1979) (quotation omitted). A motion pursuant to § 2255 "may not do service for an appeal," United States v. Frady, 456 U.S. 152, 165 (1982), and therefore § 2255 claims that should have been raised at trial, Wainwright v. Sykes, 433 U.S. 72, 91 (1977), and claims that could have been raised on direct appeal but were not, Frady, 456 U.S. at 167-68, are procedurally defaulted unless one of three exceptions applies. The first exception applies when a Petitioner demonstrates "cause" for his procedural default and "actual prejudice" therefrom. Id. The second applies when a Petitioner can demonstrate his actual innocence in either a capital case, or a case in which a recidivist sentencing enhancement was applied to the Petitioner. United States v. Mikalajunas, 186 F.3d 490, 494-95 (4th Cir. 1999). The third exception, and the one at issue here, applies when a Petitioner brings a claim of constitutionally ineffective assistance of counsel under the standard set forth in Strickland v. Washington, 466 U.S. 668, 687-91 (1984). United States v. DeFusco, 949 F.2d 114, 120-21 (4th Cir. 1991).

Criminal defendants have a Sixth Amendment right to "reasonably effective" legal assistance. Strickland, 466 U.S. at 687. In Strickland, the Supreme Court announced a two pronged test for evaluating claims of ineffective assistance of counsel: a defendant is entitled to

relief if his counsel's performance was deficient and the defendant suffered prejudice. Deficiency is defined as falling below the "wide range of professionally competent assistance." Id. at 690. The Fourth Circuit has since held that counsel's failure to file a notice of appeal when requested by his client constitutes ineffective assistance of counsel, "notwithstanding that the lost appeal may not have had a reasonable probability of success." United States v. Peak, 992 F.2d 39, 42 (4th Cir. 1993); accord Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). On appeal of this Court's initial denial of Mathews's § 2255 petition, the Fourth Circuit's decision made clear that counsel must file a notice of appeal upon request even when defendant knowingly and voluntarily waived his right to appeal in a bargained-for plea agreement. Despite the Fourth Circuit's earlier definition of deficiency as "[falling] below the wide range of professionally competent assistance," Peak, 992 F.2d at 41, the question we must now ask is not a question of whether counsel was good, bad, or indifferent in his representation of defendant, but rather, did the defendant make a request for appeal? And if so, did counsel refuse to follow the orders of the defendant? Counsel must follow the orders of the defendant regardless of how frivolous an appeal may be and even when an appeal waiver has been negotiated in an agreement by counsel and the defendant. Failure to appeal constitutes ineffective assistance of counsel as a matter of law, a true oxymoron given that an appeal may violate the defendant's desire to cooperate to lessen his sentence as well as the explicit waiver of appeal in the plea agreement and thus may in fact be in the defendant's worst interests.

**B.**

The undersigned finds that Petitioner has failed to prove by a preponderance of the evidence that he requested, either orally or in writing, and either directly or through his family,

10

that his attorney, Harmon, file a notice of appeal subsequent to the sentencing hearing.

Matthews alleges that within minutes of telling the undersigned in open court that he did not wish to appeal his sentence, and before the U.S. Marshals handcuffed him, he changed his mind and asked defense counsel Harmon to note an appeal. Petitioner's family members testified to overhearing this conversation from several rows back in the courthouse. In response to questioning from the Bench, however, none of the four witnesses could recall any of the instructions the Court gave Mr. Matthews regarding his right to appeal just moments earlier or the fact that he stated in open court that he did not want to appeal. What is more, three of the four witnesses also testified that the sentencing hearing took place on the second floor of the courthouse[2]; there is no courtroom on the second floor. The family members' failure to recall the substance of proceedings that concluded just minutes before the conversation they allegedly overheard and the fact that three of them testified to a non-existent fact, leads the Court to believe that their testimony regarding the appeal conversation was not based upon what was said on that day, but rather was the product of subsequent discussions between them.

The family members also testified that they met with defense counsel Harmon to discuss the case and the appeal immediately after leaving the sentencing proceedings. Petitioner's sister Emiko Matthews-Mason and Petitioner's mother Linda Matthews allegedly then made numerous phone calls to Harmon in the following week. Petitioner was unable, however, to present any documentary evidence of either the conversations on the day of sentencing or the family's attempts to contact Harmon. In contrast, Mr. Harmon took meticulous notes of his contact with Petitioner and his family, none of which make reference to any

---

[2]One witness, Emiko Matthews-Mason, was not asked about the location of the hearing.

conversation regarding an appeal. Given Mr. Harmon's habit of taking detailed notes, his extensive experience in federal criminal matters, and his prior experience with filing appeals for defendants who had waived their right to appeal in their plea agreements,[3] the Court finds it highly unlikely that defense counsel Harmon would not note or recall a request to appeal, particularly when that request was allegedly repeated several times through Petitioner's family.

Moreover, Mr. Harmon's notes and the bill he submitted for reimbursement demonstrate that he promptly responded to his client's communications. Mr. Harmon testified that he received a message from his client, Matthews, on May 25, 2004, asking Harmon to visit him at the jail. Harmon's bill indicates that he spoke with Petitioner's sister, Emiko, by phone on the same day and thereafter traveled to Western Tidewater Regional Jail to visit with Petitioner. Mr. Harmon was unable to meet with the Petitioner on that day because he arrived at the jail late in the evening and jail officials would not give him access. Harmon again traveled to the jail on May 26, 2004, and met with Mr. Matthews for 1.4 hours.[4] These visits are reflected in the attorney's notes as well as the bill submitted to the Court on June 3, 2004. Given Mr. Harmon's efforts to visit his client within a day of receiving Mr. Matthews's first message and Mr. Harmon's vigorous advocacy on behalf of his client throughout the case, the Court

---

[3] On cross-examination Mr. Harmon testified that he had defended roughly fifty federal criminal defendants, and in one or two of those cases, he had filed an appeal despite a plea agreement waiver of appeal.

[4] Mr. Matthews testified that he last met with his attorney, Mr. Harmon, on May 17, 2004. Matthews did recall a post-sentencing meeting at the jail regarding cooperation with the Government's investigation, but testified that only two individuals were present other than himself, neither of whom were Mr. Harmon. However, in light of Mr. Harmon's notes from the meeting and his recordation of the meeting on the bill he submitted to this Court, the undersigned finds that Mr. Harmon did meet with the Petitioner at the Petitioner's place of incarceration on May 26, 2004.

concludes that Petitioner's counsel, Mr. Harmon, would have filed a notice of appeal if Petitioner or his family had so requested.

If Petitioner was in fact so surprised and upset by the length of his sentence that he decided to appeal within minutes of telling the Court that he did not wish to appeal, surely he would have raised the issue of the appeal in his meeting with his attorney, Harmon, at the jail on May 26, 2004. Instead, Harmon's notes reflect that they discussed cooperation with the Government. Furthermore, if Petitioner's family was having so much trouble reaching Harmon by telephone to discuss the appeal, why did they not attempt to contact him by another means, such as by letter? The first time that Harmon received written communication regarding the Petitioner's desire to appeal was almost eleven months later when Petitioner wrote to Harmon seeking assistance with his "2255" motion. The lack of any documentation to support Petitioner's allegation indicates that he did not ask his attorney to appeal, especially in light of the Court's conclusion at the sentencing hearing of the superior intelligence of the Petitioner:

> THE COURT: You know, Mr. Matthews, the thing that comes out in this presentence report is your native intelligence and your ability to have progressed if you'd gone into a legitimate enterprise... There are not that many people that have that much intelligence. There are just not that many people that do. It's just a shame that you went down that road because you could have achieved so much in just the private sector without having to resort to that.

Tr. of Sentencing Proceedings (5/17/04) at 16-17.

Petitioner's allegation that he requested counsel to file a notice of appeal is undermined by not only his attorney's testimony to the contrary, but also the fact that any rational defendant would want his sentence reduced, and the only way to do so was cooperation with the Government. Petitioner knew that his attorney, Mr. Harmon, had obtained massive

13

concessions from the Government, resulting in a much lower sentence than the Court would have otherwise imposed. The Court made sure that Matthews was aware of this at the sentencing:

> THE COURT: I must say that your attorney has done an outstanding job. I have agreed to go along with any stipulations made by the government and your attorney. I don't know if you know how lucky you are... But you ought to thank your lucky stars you had Mr. Harmon helping you.

Tr. of Sentencing Proceedings (5/17/04) at 21. Matthews was also aware that his only hope of obtaining a further reduction in his sentence was through cooperation. The Court went on to say:

> THE COURT: Your only chance of even improving this sentence, which I think is lenient in accordance with having read the presentence report, is to cooperate with the government. I'm sure Mr. Harmon has told you that. That way you possibly may be able to get your sentence reduced.

Tr. of Sentencing Proceedings (5/17/04) at 21. It is simply not credible that having waived his right to appeal and having been instructed by his lawyer that the only way to avoid the mandatory minimums was a Rule 35(b) motion by the Government, that Petitioner nevertheless ordered his attorney to file an appeal. It also belies believability that Petitioner would have voiced his desire to appeal within minutes of telling the Court that he understood the waiver provision of his plea agreement and did not wish to enter a notice of appeal. Throughout the course of this case the Court has reviewed the waiver of appeal in extensive detail to ensure that Petitioner was making a knowing and voluntary waiver of his rights. At the February 4, 2004, guilty plea proceeding, the Court explained to Matthews the consequences of executing the Plea Agreement:

> THE COURT: Now, everyone has a right to appeal any sentence this court imposes. Your plea agreement contains a provision whereby you waive your right to appeal. That means you just don't

14

> have a right to appeal any sentence this court imposes. But you still have a right to appeal should I – should the sentence exceed the maximum allowed by statute. In this case it's life. I don't know how it could exceed it, but should it exceed it you would have a right to appeal; ***however, you have waived that right to appeal. . . . And I want you to understand what's contained in the plea agreement, that you have waived your right to appeal*** while the government claims it has a right to appeal.

Tr. of Guilty Plea Proceedings (2/4/04) at 18 (emphasis added). Before accepting his guilty plea, the Court informed Matthews that he had an absolute right to plead not guilty and to proceed to trial as though the guilty plea proceedings had never taken place:

> THE COURT: You have an absolute right, again, to plead not guilty. You can change your mind at the last minute, and it would be as if these proceedings never occurred. Do you understand that?
>
> THE DEFENDANT: Yes, sir.

Id. at 20. Matthews again declined the opportunity to appeal during the sentencing hearing on May 17, 2004, just minutes before he allegedly told his attorney that he wanted to appeal:

> THE COURT: You have a right to appeal, Mr. Matthews. If you desire to appeal, your appeal must be in writing and filed within 10 days from the date hereof. [Your attorney] has joined the petition that is the plea agreement, and so have you, and in your plea agreement you waived your right to appeal; however, that doesn't mean you can't appeal. You have a right to appeal if the sentence imposed is greater than the statutory maximum. And although you have waived your right to appeal I will – [your attorney] is in a catch 22 situation. That is, he has agreed that, according to the plea agreement, that he would not appeal, and you have agreed not to appeal; however, you have a right to appeal, so if you want to appeal I'll ask you right now, do you desire to appeal the sentence that has been imposed in this case? I'm happy to instruct the clerk to file a notice of appeal for you. Do you understand your rights?
>
> THE DEFENDANT: Yes, I do.

>  THE COURT: Do you desire to appeal?
>
>  THE DEFENDANT: No, sir.
>
>  THE COURT: All right. In which event we'll recess until 2 o'clock.
>
>  (Whereupon, proceedings were concluded at 10:55 a.m.)

Tr. of Sentencing Proceedings (5/17/04) at 23-24. Given his level of intelligence and the aforementioned remarks from the Court, the undersigned has no doubts that Matthews understood his waiver of appeal and would not have forfeited his right to cooperate, which he obtained under the plea agreement, by filing a baseless appeal. The Court does not believe the testimony of the Petitioner or his family members claiming that Harmon was told to appeal and instead believes the testimony of the attorney, Mr. Harmon, that at no time was he requested to appeal. The Court finds as a fact that neither the Petitioner nor any of his family asked or requested Mr. Harmon to appeal at any time during the year 2004.

### III. CONCLUSION

For the reasons set forth above, Matthews's motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255 is **DENIED**. The undersigned is troubled that defendants who have no grounds for appeal can nonetheless compel a court to hold a hearing by simply alleging that their attorney ignored their instructions to note an appeal. To overcome this problem in the future and in order to preserve the appellate rights of defendants, judicial economy, and a defendant's right to cooperate with the Government in order to lessen his sentence, the undersigned hereby recommends that the Court, and not the defendant, file a notice of appeal in each and every case where a defendant has waived his right to appeal in a written plea agreement. The defendant may then withdraw his appeal. Thus neither the attorney nor the

defendant acts uncooperatively with the Government, and the attorney is saved from being placed in an ethically questionable position of having to file a notice of appeal when he and his client bargained away that right in a plea agreement and where cooperation is still a possibility.

Matthews is **ADVISED** that he may appeal from this Opinion and Order by forwarding a written notice of appeal to the Clerk, United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510. The written notice of appeal must be received by the Clerk within sixty (60) days of the date of this Opinion and Order.

The Clerk of the Court is **DIRECTED** to provide a copy of this Order to the Defendant, the Defendant's counsel of record in the criminal proceedings before this Court, and to the Assistant United States Attorney handling this matter.

**IT IS SO ORDERED.**

_____/s/_____
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia

September 27, 2007